PREVIOUSLY FILED WITH CSO AND CLEARED FOR PUBLIC FILING

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AHMED ZAID SALEM ZUHAIR, <br><br> *Petitioner*, <br><br> v. <br><br> GEORGE W. BUSH, ROBERT GATES, REAR ADM. MARK H. BUZBY, and ARMY COL. BRUCE VARGO, <br><br> *Respondents*. | Civil Action No. 08-864 (EGS) |

## PETITIONER'S STATUS REPORT

Pursuant to the Court's Order of July 7, 2008, Petitioner Ahmed Zaid Salem Zuhair, through his attorneys, provides the following Status Report.

### I. BACKGROUND

Petitioner Ahmed Zaid Zuhair has been detained by the United States and kept from his family and children for over six years without charge, trial, or due process. Mr. Zuhair is a civilian and has never participated in armed activities against the United States or its allies. He was abducted in Pakistan, away from any battlefield, while traveling on business and visiting his wife's family. To protest his indefinite and unlawful detention, Mr. Zuhair has been on hunger strike for over three years, since June 2005, longer than anyone else at Guantánamo. In a bid to break his will, Respondents have denied Mr. Zuhair needed medical treatment and subjected him to numerous forms of abuse. Mr. Zuhair seeks his proverbial day in court so he can be released to his homeland, Saudi Arabia.[1] Prompt adjudication of this case is especially urgent and necessary to preserve the Court's jurisdiction, as Mr. Zuhair's deteriorating health could prevent

---

[1] From May 2003 to December 2007, Respondents repatriated 117 Guantánamo Bay prisoners to Saudi Arabia in 11 batches. Saudi authorities are willing to receive Mr. Zuhair and there is no justification for his continued detention.

his meaningful access to counsel and jeopardize his ability to participate in the fair legal proceedings he has awaited for years. His is very much a case in which "the costs of delay can no longer be borne by those who are held in custody." *Boumediene v. Bush*, 128 S. Ct. 2229 at 2275 (2008).

In late 2001, Mr. Zuhair was kidnapped in a marketplace in Lahore, Pakistan—distant from any battlefield—and was detained and tortured in that country. He was subsequently rendered to U.S. custody in Afghanistan, where he was also tortured and subjected to cruel, inhuman, and degrading treatment. Mr. Zuhair was transferred to Guantánamo Bay, Cuba in June 2002, where he has been abused by guards as well as medical staff and subjected to all manner of debasing and humiliating treatment.

In October 2004, nearly three years after Mr. Zuhair's initial abduction in Pakistan, the government revealed the basis for its labeling of Mr. Zuhair as an "enemy combatant" in a memorandum summarizing the claims presented at his Combatant Status Review Tribunal (CSRT) hearing. Mr. Zuhair declined to participate in his CSRT hearing because of the fundamentally unfair nature of that body and its proceedings. Most of the assertions regarding Mr. Zuhair are vague and completely unsubstantiated. The two most specific allegations were that he played an unspecified role in the 2000 bombing of the U.S.S. Cole in Yemen and that he participated in the 1995 murder of an American employee of the United Nations, William Arnold Jefferson in Bosnia-Herzegovina. The CSRT also cited Mr. Zuhair's conviction *in absentia* by a court in Bosnia-Herzegovina for alleged involvement in a bombing in the city of Mostar on September 18, 1997.

As detailed in his petition, Mr. Zuhair categorically denies all of the accusations against him, none of which have been substantiated by the Government. The allegation about the U.S.S.

Cole attack appears to be an uncorrected vestige of an early case of mistaken identity, in which interrogators confused Mr. Zuhair with another detainee known by an alias similar to one of Mr. Zuhair's nicknames. The Jefferson murder has been exhaustively investigated by the FBI, the United Nations, and Bosnian authorities, leading to the issuing of an internationally-circulated arrest warrant for another individual and no charges against Mr. Zaid. Finally, the investigation that led to Mr. Zuhair's trial *in absentia* for the Mostar bombing was criticized by the United Nations. The conviction was based almost exclusively on the testimony of a convicted felon and notorious perjurer who stated that he had been manipulated by local authorities to implicate the absent Mr. Zuhair and attempted to recant his testimony during the trial.

Nevertheless, the CSRT concluded that Mr. Zuhair was an "enemy combatant" and Respondents have reiterated their baseless accusations in different forms for Mr. Zuhair's Administrative Review Board (ARB) proceedings in 2005, 2006, and 2008. In these proceedings, the Government again added vague and unsubstantiated allegations relating to activities in Afghanistan and Kuwait and a "connection to" the Algerian Armed Islamic Group and the Egyptian Islamic Group. Other than when he was forcibly taken to Afghanistan and held there by U.S. authorities, Mr. Zuhair has never traveled to these countries, let alone participated in armed actions there, nor has he ever been a member or supporter of these groups.

The government has yet to provide any reliable evidence that Mr. Zuhair was a part of the Taliban or Al Qa'ida, or ever committed any violent act against the United States or any U.S. person or property, or provided material support for acts of terrorism. As the U.S. Court of Appeals for the District of Columbia Circuit recently held, mere assertion by the Government does not constitute a sufficient evidentiary basis to hold an individual as an enemy combatant. *Parhat v. Gates*, ___ F.3d ___, 2008 WL 2576977, at *11 (D.C. Cir. No. 06-1397, June 20,

2008) (court could not assess reliability of assertions in Government's documents "[a]nd because of this deficiency those bare assertions cannot sustain the determination that Parhat is an enemy combatant"). Moreover, many of the alleged acts, such as the Mostar bombing—which occurred four years before the September 11 attacks, was never attributed to al-Qa'ida or its allies, and did not target or affect any American nationals or property—cannot possibly fall under any reasonable interpretation of the Authorization for Use of Military Force (AUMF)[2] or any other claimed source of combatant detention power.

Mr. Zuhair's continuing indefinite incarceration threatens his physical and mental wellbeing as well as this Court's jurisdiction over the instant matter. Twice a day for over three years now, a force-feeding tube is violently pushed through his nostril and down into his stomach, without anesthesia or lubricants. In order to break Mr. Zuhair's hunger strike, Guantánamo staff have denied him needed medical treatment for his intense kidney, stomach, neck, spinal and joint problems and have repeatedly subjected him to physical abuse, including wanton beatings, even macing him in the face while he was strapped to the feeding chair. The retaliatory denial of medical care and physical punishment threaten Mr. Zuhair's health as well as his ability to communicate with counsel and to participate meaningfully in his habeas proceedings.

Mr. Zuhair's children have grown up without him and he has not even been allowed to speak to them since his incarceration began years ago. Petitioner will never see his father again—he recently passed away in Saudi Arabia while his son was locked up at Guantánamo.

---

[2] The AUMF authorizes "all necessary and appropriate force against those nations, organizations, or persons [the President] determines planned, authorized, committed, or aided the terrorist attacks that occurred on September 11, 2001, or harbored such organizations or persons, in order to prevent any future acts of international terrorism against the United States by such nations, organizations or persons." Public Law 107-40 [S. J. RES. 23].

4

Mr. Zuhair continues to be deprived of his liberty and the enjoyment of life and family. The tragedy of his open-ended detention cries for relief that only this Court can provide.

## II. PROCEDURAL HISTORY

Mr. Zuhair filed his Petition for Writ of Habeas Corpus in this Court on May 19, 2008. Petitioner had previously filed a Petition for Immediate Release and Other Relief before the Court of Appeals on June 15, 2007 under the Detainee Treatment Act of 2005 (DTA). Petitioner filed a Motion to Compel Production of the Record on Review and Medical Records, and for the Entry of a Scheduling Order on October 30, 2007. Briefing on the Motion to Compel was completed on November 23, 2007 and the parties filed supplements on April 18, 2008 and April 30, 2008, respectively.

In partial satisfaction of the relief sought in Petitioner's motion, the Government produced the classified and unclassified CSRT record, a subset of the Record on Review that the Court of Appeals ordered produced in DTA cases in its now-vacated *Bismullah* decision. *See Bismullah v. Gates*, 501 F.3d 178 (D.C. Cir. 2007) (holding that record on review consists of "such reasonably available information in the possession of the U.S. Government bearing on the issue of whether the detainee meets the criteria to be designated as an enemy combatant"), *vacated*, ___ U.S. ___, 2008 WL 436938, (U.S. No. 07-1054, June 23, 2008). In Mr. Zuhair's case, the CSRT record, in its unclassified portion, is a thin collage of documents consisting mostly of secondhand media reports. The Court of Appeals has not ruled on the remainder of the relief sought in the pending motion—namely, production of medical records and of the balance of the Record on Review—nor has it reached the merits of the DTA petition.

On June 12, 2008, the Supreme Court struck down §7 of the Military Commissions Act of 2006, 28 U.S.C. §2241(e), which purported to deprive this Court of jurisdiction over habeas

corpus petitions filed by Guantánamo detainees. *Boumediene v. Bush*, 128 S.Ct. 2229 (2008). The Court held that "[t]he detainees in these cases are entitled to a *prompt* habeas corpus hearing." 128 S.Ct. at 2275 (emphasis added). The Court also held that detainees were not required to exhaust the DTA process before seeking adjudication of their habeas petition. *Id*. On June 18, 2008, Petitioner moved the Court for a status conference. The Government's response on June 23 stated that the "relief addressed in petitioners' motions is not appropriate at this time, given the ongoing discussions before Chief Judge Lamberth."

Since *Boumediene*, there have been three significant developments in Mr. Zuhair's case. First, the Government asked the Court of Appeals on June 18 to hold Mr. Zuhair's DTA petition in abeyance pending the outcome of the habeas proceedings in this Court. Petitioner opposed Respondent's Motion as premature on July 3, 2008. The Court of Appeals has yet to rule on this motion.

Second, the Protective Order first entered by Judge Green in *In Re Guantánamo Detainee Cases*, 344 F. Supp. 2d 174 (D.D.C. 2004), was entered in this case by Judge Sullivan on June 25, following a motion by Petitioner. Petitioner does not seek modification of the Protective Order at this time.[3] Undersigned counsel has been cleared to view classified information for two years and has done so in the course of the DTA proceedings.

Third, notwithstanding Chief Judge Lamberth's assignment of most Guantánamo habeas corpus petitions to Senior Judge Hogan for coordination and management of certain issues, Judge Sullivan has decided to retain this case "for all purposes" and has ordered the filing of this status report so the Court may "promptly schedule status hearings." *See Zuhair v. Bush*, No. 08-864, Dkt. No. 17 (D.D.C. July 7, 2008) (ordering submission of status reports).

---

[3] However, to accommodate the Court Security Officer's concern regarding burdensome filing procedures, the parties may apply for a limited modification to that effect or the Court could so order, as per Paragraph 3 of the Protective Order.

## III. PENDING ISSUES

**A.    The Court Should Require Immediate Production of the CSRT Record as a Return**

The Court should order the Government to file immediately the classified and unclassified record of Petitioner's Combatant Status Review Tribunal as a return in this case, without modifications.[4] The Government determined the basis for its detention of Petitioner nearly four years ago at the latest, for his CSRT in October 2004. That CSRT record was produced in the course of Petitioner's DTA proceedings as recently as April 2008 and is thus readily available to Respondents.

A prompt return comprising the full CSRT record would be the fastest route to disposition on the merits. Any augmentation, reduction, or other modification of this return should require leave of the Court, and should be granted only upon a showing of good cause by Respondents. If indeed Respondents wish to amend their return, they should submit their motion for leave to amend, along with the proposed amended factual return, within one week of the filing of the return. Petitioner reserves the right to oppose any such requests for leave to supplement or amend the CSRT record, as the Government has for years insisted that such record is a sufficient basis for Petitioner's detention.

The scope of the return will be important in determining the extent of any discovery that Petitioner may seek. Should the Court grant leave to supplement or amend the CSRT record, Petitioner might require additional discovery to develop the fairest and most comprehensive factual record possible before the Court. Such discovery requests might include, for instance, all exculpatory information regarding Petitioner in Respondents' possession, full reports of

---

[4] To the extent that a narrow subset of the classified portion of Petitioner's CSRT record has been redacted by Respondents, the propriety of such redactions is presently being reviewed by the Court of Appeals. Petitioner agrees to await that court's resolution of the issue before seeking fully unredacted versions.

Petitioner's interrogations, all witness statements pertaining to him, and all reports by foreign intelligence agencies containing claims about him.

B.  **The Court Should Order Immediate Production of Petitioner's Complete Medical Records**

Securing access to Petitioner's complete medical records is urgent. Petitioner's precarious health jeopardizes his participation in this habeas action and potentially undermines his ability to inform meaningfully, consult, or instruct counsel. Access to medical records is therefore crucial to preserving this Court's jurisdiction. It is also a necessary first step in obtaining an independent assessment of Petitioner's physical and mental health—something he has been denied for over six years. Since first seeking access to his medical records eight months ago—a standard right for detainees incarcerated by the Federal Bureau of Prisons under 28 C.F.R. § 513.42—Petitioner has encountered only resistance from the Government. Respondents denied a request for medical records prior to the filing of the Motion to Compel Production in the DTA proceedings before the D.C. Circuit and then formally opposed the motion itself. Guantánamo medical personnel's refusal to diagnose properly or treat Petitioner's multiple ailments, including severe kidney and spinal pain—or even to use local anesthetic or lubricant when forcing a feeding tube into Petitioner's stomach via his nose—only compound Respondents' obdurate refusal to release Petitioner's medical records.

C.  **The Court Should Issue a 30-Day Notice Order for any Transfer**

Petitioner requests that the Court issue an order requiring the Government to provide counsel and the Court with 30 days' notice of any intention to move Petitioner from Guantánamo

8

Bay, Cuba, and to specify the destination of any intended transfer as well as any attendant restrictions on Petitioners' freedom of movement or communication in the receiving country.[5]

## IV. PROPOSED SCHEDULE

Mr. Zuhair's priority is to receive a prompt and fair hearing on the merits of his Petition for Writ of Habeas Corpus. Petitioner respectfully requests that the Court enter the following scheduling order to govern pre-hearing issues.

| **Date** | **Item** |
| --- | --- |
| July 18, 2008 | Respondents file classified and unclassified CSRT record |
| | Respondents to produce Petitioner's medical records |
| July 25, 2008 | Government to file motion for leave to amend return, if any, along with proposed amended return |
| August 1, 2008 | Petitioner's opposition to any request for leave to amend return due |
| August 15, 2008 | Deadline for conference between counsel as to discovery issues |
| August 22, 2008 | Motions to compel due |
| August 29, 2008 | Responses to motion to compel |
| September 19, 2008 | Petitioner's traverse due |
| October 3, 2008 | Pre-hearing briefs due, including witness lists |
| October __ , 2008 | Merits hearing |

---

[5] Petitioner notes that on July 11, 2008, in all cases coordinated before him, Senior Judge Hogan ordered that counsel shall be given upon request 30-day notice of their clients' transfer.

## V. CONCLUSION

For the reasons stated above, Petitioner respectfully requests that the Court: (1) order the immediate production of the CSRT record as a return; (2) order the immediate production of Petitioner's complete medical records; (3) order the Government to provide 30 days' notice of any intention to move Petitioner from Guantánamo Bay, Cuba and to specify the destination of any transfer and any attendant conditions; (4) schedule a prompt status hearing before the Court, as requested by Petitioner on June 18 and as referenced in this Court's July 7 Order; (5) enter a Scheduling Order governing further proceedings in the form set forth herein; and, irrespective of all the foregoing, (6) set a firm date for a merits hearing on the Petition within 120 days.

Dated: July 14, 2008

                                              Respectfully submitted,

                                              /s/_____
                                              Ramzi Kassem
                                              Michael J. Wishnie
                                              *Supervising Attorneys*

                                              Anand Balakrishnan
                                              Jessica Chen
                                              Madhuri Kumar
                                              Darryl Li
                                              *Law Student Interns*

                                              Allard K. Lowenstein International Human Rights
                                                 Clinic
                                              National Litigation Project
                                              Yale Law School
                                              127 Wall Street
                                              New Haven, CT 06511
                                              (203) 432-0138
                                              ramzi.kassem@yale.edu
                                              *Counsel for Petitioner*

**CERTIFICATE OF SERVICE**

      I hereby certify that on July 14, 2008, I caused a true and accurate copy of Petitioner's Status Report to be served upon the following counsel for Respondents via hand delivery to the Court Security Officer ("CSO") and noticed the same by electronic filing:

Andrew I. Warden, Esq.
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave, NW
Washington, DC 20530

      /s/_____
DAVID ZACHARY HUDSON
Allard K. Lowenstein International Human Rights Clinic
National Litigation Project
Yale Law School
127 Wall Street
New Haven, CT 06511
(203) 432-0138
zac.hudson@yale.edu