IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AHMED ZAID SALEM ZUHAIR,

Petitioner,

v.

GEORGE W. BUSH, *et al.*,

Respondents.

Civil Action No. 08-0864 (EGS)

**RESPONDENTS' NOTICE OF FILING OF**
**COMBATANT STATUS REVIEW TRIBUNAL RECORD**

Pursuant to the Court's July 31, 2008 Order in this case, respondents hereby provide notice of the submission of the Combatant Status Review Tribunal ("CSRT") paper record pertaining to petitioner.

The portion of the record suitable for public release is attached hereto. *See* Exhibit A.

Remaining portions of the record, including information that are classified or not suitable for public release, are being submitted under seal through the Court Security Officers. One copy of the classified CSRT record is being submitted to the Court for *in camera* review. Another copy of the classified CSRT, containing information suitable for disclosure to counsel under seal, is being made available to petitioner's counsel who have been issued security clearances, consistent with the applicable protective order. Both copies of the classified CSRT contain highlighting explained therein. Respondents have designated certain highlighted, unclassified

information in the CSRT record as "protected information" under the protective order,[1] as noted in the classified submission.

Dated: August 12, 2008

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JOHN C. O'QUINN
Deputy Assistant Attorney General

/s/ *Terry M. Henry*
JOSEPH H. HUNT (D.C. Bar No. 431134)
VINCENT M. GARVEY (D.C. Bar No. 127191)
JUDRY L. SUBAR (D.C. Bar No. 347518)
TERRY M. HENRY
ANDREW I. WARDEN
PAUL AHERN
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044
Tel: (202) 514-4107

[1] Pursuant to the protective order, respondents are disclosing this information to petitioner's counsel, who shall treat such information as "protected" unless and until the Court rules that the information should not be designated as "protected."

# EXHIBIT A



# Department of Defense
## Director, Combatant Status Review Tribunals

OARDEC/Ser: 678
16 JAN 2005

~~FOR OFFICIAL USE ONLY~~

From: Director, Combatant Status Review Tribunal

Subj: **REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL FOR DETAINEE ISN # 669**

Ref: (a) Deputy Secretary of Defense Order of 7 July 2004
(b) Secretary of the Navy Order of 29 July 2004

1. I concur in the decision of the Combatant Status Review Tribunal that Detainee ISN #669 meets the criteria for designation as an Enemy Combatant, in accordance with references (a) and (b).

2. This case is now considered final and the detainee will be scheduled for an Administrative Review Board.

J. M. McGARRAH
RADM, CEC, USN

Distribution:
NSC [redacted]
DoS (Ambassador Prosper)
DASD-DA
JCS (J5)
SOUTHCOM (CoS)
COMJTFGTMO
OARDEC (Fwd)
CITF Ft Belvoir

13 Jan 05

MEMORANDUM

From: Assistant Legal Advisor
To: Director, Combatant Status Review Tribunal
Via: Legal Advisor [redacted]

Subj: LEGAL SUFFICIENCY REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL FOR DETAINEE ISN # 669

Ref: (a) Deputy Secretary of Defense Order of 7 July 2004
(b) Secretary of the Navy Implementation Directive of 29 July 2004

Encl: (1) Appointing Order for Tribunal #7 of 13 September 2004
(2) Record of Tribunal Proceedings

1. Legal sufficiency review has been completed on the subject Combatant Status Review Tribunal in accordance with references (a) and (b). After reviewing the record of the Tribunal, I find that:

a. The detainee was properly notified of the Tribunal process and voluntarily elected not to participate

b. The Tribunal was properly convened and constituted by enclosure (1).

c. The Tribunal substantially complied with all provisions of references (a) and (b). Note that some information in exhibit R-9 was redacted. The FBI properly certified in exhibit R-2 that the redacted information would not support a determination that the detainee is not an enemy combatant. Additionally, note that some information contained in exhibit R-9 has been redacted without FBI certification. It is clear that the redacted information consists of portions of Internment Serial Numbers (ISNs) and classification marks and that the redacted information would not support a determination that the detainee is not an enemy combatant.

d. The detainee did not request that any witnesses or evidence be produced.

e. The Tribunal's decision that detainee #669 is properly classified as an enemy combatant was unanimous.

2. The proceedings and decision of the Tribunal are legally sufficient and no corrective action is required.

Subj: LEGAL SUFFICIENCY REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL FOR DETAINEE ISN # 669

3. I recommend that the decision of the Tribunal be approved and the case be considered final.

Peter C. Bradford
PETER C. BRADFORD
LT, JAGC, USNR



Department of Defense
Director, Combatant Status Review Tribunals

13 Sep 04

From: Director, Combatant Status Review Tribunals

Subj: APPOINTMENT OF COMBATANT STATUS REVIEW TRIBUNAL #7

Ref: (a) Convening Authority Appointment Letter of 9 July 2004

By the authority given to me in reference (a), a Combatant Status Review Tribunal established by "Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base, Cuba" dated 29 July 2004 is hereby convened. It shall hear such cases as shall be brought before it without further action of referral or otherwise.

The following commissioned officers shall serve as members of the Tribunal:

MEMBERS:

[redacted] Colonel, U.S. Army; President

[redacted] Commander, JAGC, U.S. Navy; Member (JAG)

[redacted] Lieutenant Commander, U.S. Navy; Member

J. M. McGARRAH
Rear Admiral
Civil Engineer Corps
United States Naval Reserve



**HEADQUARTERS, OARDEC FORWARD**
GUANTANAMO BAY, CUBA
APO AE 09360

08 December 2004

MEMORANDUM FOR DIRECTOR, CSRT

FROM: OARDEC FORWARD Commander

SUBJECT: CSRT Record of Proceedings ICO ISN# 669

1. Pursuant to Enclosure (1), paragraph (I)(5) of the *Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base, Cuba* dated 29 July 2004, I am forwarding the Combatant Status Review Tribunal Decision Report for the above mentioned ISN for review and action.

2. If there are any questions regarding this package, point of contact on this matter is the undersigned at DSN [redacted]

CHARLES E. JAMISON
CAPT, USN

SECRET//NOFORN//X1

**(U) Combatant Status Review Tribunal Decision Report Cover Sheet**

(U) This Document is UNCLASSIFIED Upon Removal of Enclosures (2) and (3).

(U) TRIBUNAL PANEL: #7

(U) ISN#: 669

Ref: (a) (U) Convening Order for Tribunal #7 of 13 September 2004 (U)
(b) (U) CSRT Implementation Directive of 29 July 2004 (U)
(c) (U) DEPSECDEF Memo of 7 July 2004 (U)

Encl: (1) (U) Unclassified Summary of Basis for Tribunal Decision (U/~~FOUO~~)
(2) (U) Classified Summary of Basis for Tribunal Decision (~~S/NF~~)
(3) (U) Copies of Documentary Evidence Presented (~~S/NF~~)
(4) (U) Personal Representative's Record Review (U/~~FOUO~~)

1. (U) This Tribunal was convened by references (a) and (b) to make a determination as to whether the detainee meets the criteria to be designated as an enemy combatant as defined in reference (c).

2. (U) On 6 November 2004, the Tribunal determined by a preponderance of the evidence that Detainee #669 is properly designated as an enemy combatant as defined in reference (c).

3. (U) In particular, the Tribunal finds that this detainee is a member of, or affiliated with, Al Qaida forces and associated forces that are engaged in hostilities against the United States or its coalition partners, as more fully discussed in the enclosures.

4. (U) Enclosure (1) provides an unclassified account of the basis for the Tribunal's decision. A detailed account of the evidence considered by the Tribunal and its findings of fact are contained in enclosures (1) and (2).



Tribunal President

DERV FM: Multiple Sources
DECLASS: XI

SECRET//NOFORN//X1

# UNCLASSIFIED SUMMARY OF BASIS FOR TRIBUNAL DECISION

**(Enclosure (1) to Combatant Status Review Tribunal Decision Report)**

TRIBUNAL PANEL: #7
ISN #: 669

**1. Introduction**

As the Combatant Status Review Tribunal (CSRT) Decision Report indicates, the Tribunal has determined that this detainee is properly classified as an enemy combatant and was part of or supporting Al Qaida forces and associated forces that are engaged in hostilities against the United States or its coalition partners. In reaching its conclusions, the Tribunal considered both classified and unclassified information. The following is an account of the unclassified evidence considered by the Tribunal and other pertinent information. Classified evidence considered by the Tribunal is discussed in Enclosure (2) to the CSRT Decision Report.

**2. Synopsis of Proceedings**

The Tribunal held this hearing on 6 November 2004. The Recorder presented Exhibits R-1 through R-8 during the unclassified portion of the Tribunal. The primary exhibit, the Unclassified Summary of Evidence (Exhibit R-1), indicates, among other things, that: the detainee traveled from Saudi Arabia to Pakistan in October 2001; the detainee is associated with the terrorist group Takvir Ve Hijra; the Takvir Ve Hijra is connected to the Al Qaida Network; the detainee was sentenced in absentia by a Bosnian court as the leader of a terrorist car bombing in Mostar, Bosnia, on 18 September 1997; the detainee identified himself in a photograph as the man convicted in absentia for the car bombing in Bosnia in 1997; the detainee was involved in the murder of a United States official (William Jefferson) who was working for the United Nations in Tuzla, Bosnia; William Jefferson's watch was among the items found in the detainee's belongings; and, the detainee was involved in the attack on the USS COLE. The Recorder called no witnesses.

The detainee did not attend the Tribunal and affirmatively declined to participate. He did not provide the Personal Representative with any statements or evidence to present on his behalf. The detainee's decision is reflected on the Detainee Election Form (Exhibit D-A). The Personal Representative presented no evidence and called no witnesses.

During the classified session of the Tribunal, the Recorder presented Exhibits R-9 through R-18 without comment. The Personal Representative presented no classified evidence, but did comment on the classified exhibits. After considering the unclassified and the classified evidence, the Tribunal determined that the detainee is properly classified as an enemy combatant.

**3. Evidence Considered by the Tribunal**

The Tribunal considered the following evidence in reaching its conclusions:

a. Exhibits: R-1 through R-18 and D-A.

b. Testimony of the following persons: None.

c. Statement of the detainee: None.

**4. Rulings by the Tribunal on Detainee Requests for Evidence or Witnesses**

The detainee requested no witnesses.

The detainee requested no additional evidence be produced.

**5. Discussion of Unclassified Evidence**

The Recorder offered Exhibits R-1 through R-8 into evidence during the unclassified portion of the proceeding. Exhibit R-1 is the Unclassified Summary of Evidence. While this summary is helpful in that it provides a broad outline of what the Tribunal can expect to see, it is not persuasive in that it provides conclusory statements without supporting unclassified evidence. Exhibit R-2, the FBI redaction certification, provided no usable evidence. Accordingly, the Tribunal had to look to the other exhibits to support the assertions on the Unclassified Summary of Evidence and the Tribunal's conclusions.

Exhibits R-3 through R-8 are news articles appearing in the foreign press (primarily Bosnia-Herzegovina) concerning the detainee. These articles link the detainee to the murder of William Jefferson, a U.S. citizen and U.N. official, in Tuzla, Bosnia-Herzegovina; the illegal possession of weapons in Bosnia-Herzegovina in 1997; and a car bomb explosion in Mostar, Bosnia-Herzegovina, on 18 September 1997. The detainee was subsequently convicted in absentia for his role as the instigator of the Mostar bombing. Regarding the murder of William Jefferson, the victim's watch was found among the detainee's belongings. When considered in conjunction with the classified exhibits, the Tribunal found this persuasive evidence of the detainee's longstanding commitment to terrorism and violent attacks against the Americans. A discussion of the classified evidence is found in Enclosure (2) to the Combatant Status Review Tribunal Decision Report.

**6. Consultations with the CSRT Legal Advisor**

None.

**7. Conclusions of the Tribunal**

Upon careful review of all the evidence presented in this matter, the Tribunal makes the following determinations:

a. The detainee chose not to participate in the Tribunal proceeding. No evidence was produced that caused the Tribunal to question whether the detainee was mentally and physically capable of participating in the proceeding, had he wanted to do so. Accordingly, no medical or mental health evaluation was requested or deemed necessary.

b. The Personal Representative informed the Tribunal that the detainee understood the Tribunal process, but chose not to participate, as indicated in Exhibit D-A.

c. The detainee is properly classified as an enemy combatant because he was part of or supporting Al Qaida forces and associated forces that are engaged in hostilities against the United States or its coalition partners.

**8. Dissenting Tribunal Member's report**

None. The Tribunal reached a unanimous decision.

Respectfully submitted,



Tribunal President

UNCLASSIFIED//~~FOUO~~

# DETAINEE ELECTION FORM

**Date:** 02-Nov-04

**Start Time:** 1030

**End Time:** 1130

**ISN#:** 669

**Personal Representative:** [redacted]
**(Name/Rank)**

**Translator Required?** YES **Language?** ARABIC

**CSRT Procedure Read to Detainee or Written Copy Read by Detainee?** YES

## Detainee Election:

☐ **Wants to Participate in Tribunal**

☒ **Affirmatively Declines to Participate in Tribunal**

☐ **Uncooperative or Unresponsive**

## Personal Representative Comments:

Detainee will NOT participate/attend the Tribunals. The tribunal process was explained and the summary of evidence read to the detainee. The detainee then indicated that he does NOT want to ~~talk and that the tribunal is a trick and a game.~~

Personal Representative [redacted] Exhibit: D-A

UNCLASSIFIED//~~FOUO~~ 000012

UNCLASSIFIED

**Combatant Status Review Board**

TO: Personal Representative

FROM: OIC, CSRT (26 October 2004)

Subject: Summary of Evidence for Combatant Status Review Tribunal – ZUHAYRI, Ahmad Zayid Salim

1. Under the provisions of the Secretary of the Navy Memorandum, dated 29 July 2004, *Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base Cuba*, a Tribunal has been appointed to review the detainee's designation as an enemy combatant.

2. An enemy combatant has been defined as "an individual who was part of or supporting the Taliban or al Qaida forces, or associated forces that are engaged in hostilities against the United States or its coalition partners. This includes any person who committed a belligerent act or has directly supported hostilities in aid of enemy armed forces."

3. The United States Government has previously determined that the detainee is an enemy combatant. This determination is based on information possessed by the United States that indicates that the detainee is associated with al Qaida.

The detainee is associated with al Qaida:

1. The detainee traveled from Saudi Arabia to Pakistan in October 2001.

2. The detainee is associated with the terrorist group, Takvir Ve Hijra (TVH).

3. The Takvir Ve Hijra is connected to the al Qaida Network.

4. The detainee was sentenced in absentia by a Bosnian court as the leader of a terrorist car bombing in Mostar, Bosnia on 18 September 1997.

5. The detainee identified himself in a photograph as the man convicted in absentia for the car bombing in Bosnia in 1997.

6. The detainee was involved in the murder of a United States official (William Jefferson) who was working for the United Nations in Tuzla, Bosnia.

7. William Jeffersons's watch was among the items found in the detainee's belongings.

8. The detainee was involved in the attack on the USS Cole.

4. The detainee has the opportunity to contest his designation as an enemy combatant. The Tribunal will endeavor to arrange for the presence of any reasonably available witnesses or evidence that the detainee desires to call or introduce to prove that he is not an enemy combatant. The Tribunal President will determine the reasonable availability of evidence or witnesses.

Unclassified

**Memorandum**



To : Department of Defense
Office of Administrative Review
for Detained Enemy Combatants
Capt. [redacted] OIC, CSRT

Date 10/25/2004

From : FBI GTMO
Counterterrorism Division
Asst. Gen. Counsel [redacted]

Subject REQUEST FOR REDACTION OF
NATIONAL SECURITY INFORMATION
[redacted]00669[redacted]

Pursuant to the Secretary of the Navy Order of 29 July 2004, Implementation of Combatant Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base, Cuba, Section D, paragraph 2, the FBI requests redaction of the information herein marked[1]. The FBI makes this request on the basis that said information relates to the national security of the United States[2]. Inappropriate dissemination of said information could damage the national security of the United States and compromise ongoing FBI investigations.

CERTIFICATION THAT REDACTED INFORMATION DOES NOT SUPPORT A DETERMINATION THAT THE DETAINEE IS NOT AN ENEMY COMBATANT

The FBI certifies the aforementioned redaction contains no information that would support a determination that the detainee is not an enemy combatant.

The following documents relative to ISN 669 have been redacted by the FBI and provided to the OARDEC:

FD-302 dated 06/15/2002

---

[1]Redactions are blackened out on the OARDEC provided FBI document.

[2]See Executive Order 12958



Unclassified

Exhibit R-2

Unclassified

Memorandum from [redacted]
Re: REQUEST FOR REDACTION, 10/25/2004

If you need additional assistance, please contact [redacted]



Document ID: [redacted]
Entry Date: 12/10/1997
Version Number: 01

**Region: East Europe**

**Sub-Region: Balkan States**

**Country: Bosnia-Herzegovina**

**Topic: TERRORISM, DOMESTIC, POLITICAL**

**Source-Date: 12/10/1997**

## Army Officer Linked to Central Bosnia Terrorism Arrested

[redacted] *Split Slobodna Dalmacija in Serbo-Croatian 10 Dec 97 p 4*

**Reference:**

1. [redacted] zagreb hina english 041403 -- hina reports iptf news conference on terrorist arrests
2. [redacted] zagreb hina english 091303 -- un spokesman reports on police 'anti-terrorist' actions
3. [redacted] sarajevo dnevni avaz serbo-croatian 4 dec -- iptf confirms 40 arrested for terrorism in central bosnia

[Report by Blanka Magas: "'Makedonac' Also Behind Bars'"]
[FBIS Translated Text] Sarajevo -- Yet another individual suspected of having played an important role in terrorist actions was arrested last weekend as part of the action to arrest individuals suspected of terrorism and murder in Central Bosnia. According to official sources, the action is led by the Federation Interior Ministry, but unofficial information claims that the Bosniak-Muslim Agency for Investigation and Documentation [AID] is behind the arrests. Citing reliable sources, Sarajevo Oslobodjenje claimed on Tuesday that the individual in question was arrested in Zavidovici and "that he is probably a Croat with a Macedonian last name who was close to the Serb option and probably worked for KOS [Counterintelligence Service]."

According to Oslobodjenje, "Makedonac," which is the alias of the arrested individual, is a member of the Army of Bosnia-Herzegovina, where he worked as an expert on explosive devices with clock mechanisms.

"The suspicion is that he was the key figure involved in the trade in explosive devices and arms used in almost all terrorist actions on the territory of the three Federation cantons in the past two years," Oslobodjenje writes.

"As a member of the Army," the paper writes, "he cooperated closely with the mujahidins from Bocinje, thus winning trust and funds for the services rendered."
At the time of his arrest, he had in his possession a certain quantity of explosives; he also cooperated directly with Abu Hamza and Handal, that is, Ahmed[0] Zuhair[0], so it is supposed that "all actions were prepared in the Maglaj village currently populated by mujahidins, Oslobodjenje claims.
"Although there are indications that terrorism in this part of Bosnia functioned in an organized manner, we can claim with certainty that several intelligence services were involved in events in the area. It is suspected that they worked simultaneously and in a coordinated fashion. This means that the actions were perpetrated by paid terrorists 'in cooperation' with spies on the ground."
Oslobodjenje also suspects that Handal, whom the paper links to the SIS [Security Information Service], and Makedonac had ties with KOS and that they were in contact with the already arrested Dumont and Bougelaine (part of the 'French connection'). That is why the general conclusion is that the Bosniak-Muslim authorities have firmly decided to settle accounts with the foreign intelligence services active on the territory they control.
This conclusion is supported by the facts that not a single Croat official is included in the action and that even the highest-ranking Party of Democratic Action officials have been circumvented, leaving the matter in the hands of a narrow circle of people.

*THIS REPORT MAY CONTAIN COPYRIGHTED MATERIAL. COPYING AND DISSEMINATION IS PROHIBITED WITHOUT PERMISSION OF THE COPYRIGHT OWNERS.*

UNCLASSIFIED



Document ID: [redacted]
Entry Date: 12/19/1997
Version Number: 02

**Region: East Europe**

**Sub-Region: Balkan States**

**Country: Bosnia-Herzegovina**

**Topic: TERRORISM, DOMESTIC, POLITICAL**

**Source-Date: 12/19/1997**

**Report on Arrest of Terrorists**

[redacted] *Sarajevo Televizija Bosne i Hercegovine in Serbo-Croatian 2100 GMT 19 Dec 97*

**Reference:**

1. [redacted] sarajevo televizija bosne i hercegovine serbo -croatian 211900 -- prosecutor's office issues report on arrest of terrorists

[Corrected version of [redacted]; explanatory note describes difference from original FBIS version]
[FBIS Translated Text] The [Bosnia-Herzegovina] Federation public prosecutor's office today published information about the arrest of terrorists in the central Bosnia canton and its successful drive to prevent terrorism. The feeling of success has unfortunately been spoiled by a report that an explosive device has been discovered in the Stup suburb of Sarajevo.
Nineteen people have been arrested, six criminal charges have been filed, and warrants for arrest of three people on the run have been issued. The following are wanted: Khiari Kallel Ben ali nicknamed Abu Hamzah, Umar Hilal nicknamed Adlullah, and Amr Zuhayr nicknamed Hamdullah.
This is information issued today by the public prosecutor's office of the Bosnia-Herzegovina Federation. Its statement then adds that, following a series of grave criminal actions and acts of terrorism committed in the Zenica-Doboj, central Bosnia, and Tuzla- Podrinje cantons, cantonal interior ministries and the federation Interior Ministry have identified a large number people who, directly or indirectly, took part in these actions.
Apart from that, the police found and seized a large quantity of arms, including an anti-aircraft tank with an optical sight and several forged documents belonging to various government and nongovernment humanitarian organizations, seals, travel documents, vehicle registration and driving licences, license plates, and even some diplomatic ones. There were also manuals for training and for carrying out terrorist actions.
The police were able to shed light on the serious crime of planting explosive devices inside the belfry of the Roman Catholic Church of Resurrection in the Puticevo village, Travnik municipality. Criminal charges have been brought against Omar Hilal nicknamed Abdela, Kramti Said nicknamed Haris, Samir

Pracalic, Edin Mrkonja, Evel Majusak, Nihad Kurtic nicknamed Abu Dzafer, and Nihad Kokic nicknamed Dzendela.

Charges were also brought against Edib Helvid, Saber Lahmar, and ali Ahmed ali Hamad, as well as against Samir Pracalic who were suspected of planning and preparing the criminal act of robbery against the guardian of the monastery in Guca Gora.

The statement of the federal prosecutor's office says that on the basis of the operative measures taken by the Interior Ministry bodies, the above, together with Abu Hamza, Handal ali Said Bavra nicknamed Kudeifa, Kaleb el Seif nicknamed Sulejman, and Rasid Sudeiti were suspected of preparing criminal acts on the territory of the federation, and consequently detained.

The investigation into the murder of US citizen William Jefferson is under way. He was killed in Tuzla on the night of 18-19 November [correcting month from "December" to "November"] this year. On the basis of the evidence collected so far, Ahmed Faiz al Samberi and Ahmet Zuhair Handala were identified as possible perpetrators.

The investigation so far has revealed that we are dealing with an organized and well-equipped terrorist group, which is targeting competent cantonal legislative bodies.

*THIS REPORT MAY CONTAIN COPYRIGHTED MATERIAL. COPYING AND DISSEMINATION IS PROHIBITED WITHOUT PERMISSION OF THE COPYRIGHT OWNERS.*

UNCLASSIFIED



Document ID: [redacted]
Entry Date: 12/27/1997
Version Number: 01

**Region: East Europe**

**Sub-Region: Balkan States**

**Country: Bosnia-Herzegovina**

**Topic: INTERNATIONAL, POLITICAL, TERRORISM**

**Source-Date: 12/27/1997**

**HINA Reports Main Mostar Bomb Suspect Still at Large**

[redacted] *Zagreb HINA in English 1640 GMT 27 Dec 97*

**Reference:**

1. [redacted] zagreb hina in english 1124 gmt 27 dec 97 -- prosecutor files charges against mostar bomb suspects

[FBIS Transcribed Text] Sarajevo, 27 Dec (HINA) -- The car bomb which went off in central western Mostar on 18 September this year was planted by Ali Ahmed Ali Hamad (alias Ubeida) and Ahmed Zahair (alias Handala), who were helped by a Saleh Nedal (alias Yemen).

Friday's and Saturday's issues of the Sarajevo-based daily Oslobodjenje reported that the police of the Federation of Bosnia-Herzegovina had arrested Ali Hamad, who admitted to have taken part in the terrorist act in Mostar, but also claimed that the mysterious Handala had been the main instigator and organizer.

Quoting unnamed sources, Oslobodjenje says that Ali Ahmed Ali Hamad is a citizen of Bahrain and officer of the Bahraini army, educated at a military academy.

Ali Hamad told police he had been blackmailed into the bomb attack in Mostar because he had owed money to Handala.

Handala is at large, but his real identity is still questionable.

Oslobodjenje also brings a copy of Handala's official ID, issued by the Croatian Foreign Ministry as an ID for an employee with the humanitarian organization "Charitable Community for Orphans."

According to Ali Hamad, Handala demanded that he be given 80 kg of explosive, which he intended to plant in Zepce, Kiseljak and Mostar.

Handala's aim was to take revenge for alleged maltreatment in prisons in Vitez and Mostar, for which he blamed Croat police.

The explosive was secured by Hasan Cizmic, Ali Hamad's brother-in-law, who gave several anti-tank mines to the terrorists.

Handala and Ali Hamad arrived in Mostar on 11 September to choose locations where explosive was to be planted.

They selected four locations -- a prison in Senoina street, a hotel, a residential block, and a petrol station.

The explosive device, which they put in Splitska street in the end, was made up of 15 anti-tank mines, 10 450-gram TNT cubes, 20 anti-personnel mines, and 15 kg of plastic explosive.

Quoting Ali Hamad's statement, Oslobodjenje says that the bomb was put in a red [Volkswagen] "golf" car and connected with a clock mechanism.

Handala put on the car diplomatic registration plates like the ones of the Iranian embassy in Bosnia-Herzegovina.

However, before they entered Mostar, plates were replaced by Mostar registration plates bearing Croat symbols.

Ali Hamad said that Handala was very happy with the "successfully" completed operation but he disappeared only four days after the explosion, having learned that he was being sought by police.

Ali Hamad was arrested in October this year and has been in prison since then.

However, Oslobodjenje claims that Ali Hamad was arrested because he is suspected of having participated in an attack on Michael Calvin, instructor with the U.S. company MPRI [Military Professional Resources, Inc.], which is training the Federation army.

According to Oslobodjenje, it was established only later that Ali Hamad was connected with the bomb attack in Mostar.

The Federation Interior Ministry has still not issued any official statement as to the operation carried out with the aim of arresting those responsible for numerous terrorist attacks, so the Bosnian public remains informed only through newspaper reports, whose real sources remain unknown.

*THIS REPORT MAY CONTAIN COPYRIGHTED MATERIAL. COPYING AND DISSEMINATION IS PROHIBITED WITHOUT PERMISSION OF THE COPYRIGHT OWNERS.*

UNCLASSIFIED



Document ID: [redacted]
Entry Date: 09/18/1998
Version Number: 01

**Region: East Europe**

**Sub-Region: Balkan States**

**Country: Bosnia-Herzegovina**

**Topic: CRIME, DOMESTIC, POLITICAL**

**Source-Date: 09/18/1998**

**Zenica Court Sentences Defendants in Mostar Bombing Case**

[redacted] *Zagreb HINA in English 0953 GMT 18 Sep 98*
[FBIS Transcribed Text] SARAJEVO, Sep 18 (Hina) -- The Zenica Canton Court has completed the trial of six foreign nationals suspected of planting a car bomb in western Mostar on September 18, 1997. The first indictee, Ahmed Zahair, alias Handala, was sentenced to 10 years in prison on Wednesday [16 September], the Sarajevo media reported.
The 34-year-old Zahair, a citizen of Saudi Arabia, is still at large and was sentenced in absentia.
The second indictee, Ali Ahmad Ali Hamad Alia, a 27-year-old Bahraini, was sentenced to eight years and Nebil Ali Ali Hila from Yemen to six years in prison.
The trial chamber, which was presided by judge Faik Spahic, acquitted Khaled El Seif, a Saudi Arabian, and Abdullah Ba Awra from Kuwait, saying the presented evidence had failed to confirm their responsibility for the Mostar explosion.
The three indictees drove a stolen car with 150kg of explosive to Mostar and left it at a parking lot near a police station.
The explosion that followed around midnight on September 18 severely wounded three people, inflicted light injuries on another 40 people, and damaged 13 business facilities, 94 flats and 96 cars.
The Zenica court decided that the offence comitted was a criminal act against general security of people and property and not an act of terrorism, which was insisted on by the prosecution.
According to judge Spahic, the first accused Handala, who was the instigator of the crime, was motivated by a desire for revenge.
Possible appeals by the defence and prosecution will be considered by the Supreme Court of the Federation of Bosnia-Herzegovina.

*THIS REPORT MAY CONTAIN COPYRIGHTED MATERIAL. COPYING AND DISSEMINATION IS PROHIBITED WITHOUT PERMISSION OF THE COPYRIGHT OWNERS.*



Document ID: [redacted]
Entry Date: 12/01/1999
Version Number: 01

**Region: East Europe, Central Eurasia**

**Sub-Region: Balkan States, Russia, Central Asia**

**Country: Bosnia-Herzegovina, Russia, Kazakhstan**

**Topic: PEACEKEEPING, TERRORISM, INTERNATIONAL POLITICAL, URGENT**

**Source-Date: 12/01/1999**

## Bosnia: 'Some 500' Fighters Leave for Chechnya

[redacted] *Bijeljina SRNA in Serbo-Croatian 1124 GMT 1 Dec 99*

[FBIS Translated Text] Bijeljina, 1st December (SRNA): A large group of mojahedin, residents of the former Serb-populated village of Bocinja [in northern central Bosnia, Serbs were expelled by Muslim forces in 1995] in the [Muslim-Croat] Federation of Bosnia-Hercegovina, recently left for Chechnya equipped with Bosnia-Hercegovina passports, [the Banja Luka-based weekly] `Nezavisne novine' report, citing a source close to the international peacekeeping forces in Bosnia.

"Some 500 people with Bosnian passports are leaving for Chechnya and Kazakhstan," the source said and added that, if they died in battle, their families had already received guarantees that they would receive aid.

"When the former commander of the El Mojahed unit [foreign mojahedin who sided with Bosnian Muslims during the 1992-1995 war against Serbs and Croats], Abu Malik Meali, left Bocinja and Bosnia with the help of the Foreign Ministry of Bosnia-Hercegovina and a Western embassy, it was realized that the terrorists have been entering and leaving the federation with the help of the authorities and intelligence services of certain states," `Nezavisne novine' reported.

The source also said that terrorist Ahmed[0] Zuhair[0] Handala[0], who is wanted by both the Bosnian authorities and Interpol, regularly visits his wife in a village near Zenica. Handala[0] was accused of illegal possession of weapons and imprisoned in Mostar in 1997. At the time, he was bearing documents identifying him as an employee of the Croatian Foreign Ministry and a French passport. He was released from prison after the then president of the federation, Vladimir Soljic, pardoned him.

BBCCMM

[Description of Source: SRNA - Bijeljina-based official news agency of the Bosnian Serb Republic. Since the Pro-Western Dodik government moved the agency from the nationalist

SDS stronghold of Pale last year, SRNA has appeared to strive for neutrality in its news coverage.]

Unclassified



Document ID: [redacted]
Entry Date: 03/25/2002
Version Number: 01

See Page 6

**Region: East Europe, Near East/South Asia, West Europe**

**Sub-Region: Balkan States, Arabian Peninsula, West Europe**

**Country: Bosnia-Herzegovina, Saudi Arabia, United Kingdom**

**Topic: DOMESTIC POLITICAL, INTERNATIONAL POLITICAL, TERRORISM**

**Source-Date: 03/08/2002**

## B-H Paper Reports on Mujahidin's Wartime Crimes, Links With Saudi Aid Group

[redacted] *Sarajevo Dani in Serbo-Croatian 08 Mar 02 pp 41-43*

**Reference:**

1. Sarajevo Weekly Claims B-H Authorities Provide Protection for Mujahidin
   [redacted] Sarajevo Dani Serbo-Croatian 01 Mar 02

[Report by Esad Hecimovic: "Kidnapping of Kidnappers From the Police"]
[FBIS Translated Text]
File number [redacted] of the former Zenica High Court deals with the indicted Abdul Hadi Al-Gahtani. The file contains documents about the investigation that the CSB [Security Services Center] Zenica, CSB Sarajevo, Military Security Sector of the 3rd Corps, and State Security Service conducted after the kidnapping of three drivers for the British ODA (Overseas Development Agency). Of the six kidnappers who abducted the three Britons on 27 January 1994 the court identified only Al-Gahtani. Abdul Hadi Al-Gahtani was in custody from 29 January to 21 March 1994 when, as the court file reads, "unknown persons kidnapped him while he was in custody."

The "kidnapping" of Abdul Hadi Al-Gahtani happened on 21 March 1994 as he was being "brought in" from Zenica KPD [correctional facility] to Sarajevo for a hearing at the Sarajevo High Court. The order for his transfer to Sarajevo was issued on 11 March 1994 by Nevzeta Boljanovic, investigating judge of the High Court in Sarajevo, as part of case number KRI 20/94. Why was Al-Gahtani sent to Sarajevo at all? The order reads that Al-Gahtani, Abu Hulud, and Abu Enes should be brought in as witnesses in the investigating case against NN (unidentified persons)?! This Sarajevo investigation was looking into the circumstances in which the three alleged accomplices to the kidnapping in Zenica had been killed on Mt. Igman on 30 January 1994. The three slain Arabs -- Abu Muaz, Abu Abdullah, and Abu Salih --

Unclassified

passed through the D-B [Dobrinja-Butmir] installation (the tunnel [underneath the Sarajevo airport runway]) into Sarajevo on 29 January 1994 because of an intervention by the military security of the 5th motorized brigade in Sarajevo. They were killed while leaving the city. The court has never proved their link with the kidnapping in Zenica. However, the police obviously needed six suspicious Arabs, as the kidnapped Britons had seen six kidnappers.

**Order From Sarajevo**

On the day when the three murdered Arabs were in Sarajevo as "special guests" of the Bosnia-Herzegovina Army's military security, another three Arabs were arrested in Zenica. In addition to Al-Gahtani, Dzafer Ihsan Malif Abu Enes, born in Amman (Yemen [as published]) in 1974, temporarily living in Mehuric, Travnik Municipality, and Adil Saleh Abu Hulud, born in San'a (Yemen) in 1973, also with temporary residence in Mehuric, were arrested in Zenica. Their custody was terminated on 1 March 1994 after the El Mudzahid [El Mujahid] unit gave a guarantee that these two indictees would answer the court's summonses. On the other hand, their lawyers claimed that it was only a coincidence that the two were traveling with leading suspect Abdul Hadi Al-Gahtani when he was arrested.

The investigating judge did not even request an extension of the custody for the two Yemenis. In explaing the request for extending Al-Ghatani's custody for two more months the investigating judge of the Zenica High Court wrote on 26 February, "It follows from the court files that at least six persons perpetrated the act, of which some are still at large, so there is a reasonable fear that the accused Abdul Hadi Al-Gahtani might obstruct the investigation by exerting influence on the accomplices if he were released." There was also a possibility of flight and causing alarm among the international public. "The case concerns a criminal offense that is punishable by law with 10 years of imprisonment or even more severe punishment. The manner of execution of the offense and its consequences have caused an alarm with the international public as well, not only with the citizens of this country. It is obvious that extending custody of the accused is necessary for the sake of unhindered conduct of criminal proceedings."

How did the leading Bosnian policemen of the time handle such an important and risky case of international importance? The order for brining in Al-Gahtani to Sarajevo was forwarded to Zenica CSB Chief Asim Fazlic from the office of Bakir Alispahic, Interior Minister of the Republic of Bosnia-Herzegovina, on 16 March 1994 via the Communications Center of the Republic of Bosnia-Herzegovina MUP [Interior Ministry]. Document number 10-356 from Alispahic's office reads, "We are forwarding you the order of the High Court in Sarajevo number KRI: 20/94 of 11 March 1994 to bring Abdul Hadi Al-Gahtani, Abu Enes Abdullah, and Adil Salem Abu Hulud. We are asking you to secure the presence of the said persons on the said date; it is also necessary to secure an extension of the custody in the Zenica court for the next month." The chief of Sarajevo CSB at that time was Munir Alibabic, now head of the Intelligence Service of the Federation of Bosnia-Herzegovina; we recall that he signed the documents in the investigation on behalf of the Sarajevo CSB.

Relations in the then state political-police leadership in January 1994, including Prime Minister Haris Silajdzic, Minister Alispahic, CSB Chief Alibabic, Mujezinovic, Nedzad Ugljen, Jasarevic, Fikret Muslimovic, and others, are important for this and other subsequent cases of scandals, kidnappings, and murders. In his book *Bosnia in the Clutches of KOS* [Counter-Intelligence Service] Alibabic writes about these conflicts in the police-political leadership, but

Unclassified

does not comment on the Al-Gahtani case. Although a number of these investigations are being reopened today, the police are still silent about the kidnapping of the Britons in Zenica and the kidnapping of the kidnappers near Dusina. In that way the strongest proof of the link between the mujahidin and Islamic humanitarian organizations as well as the links of the military-police leadership with these circles are being kept quiet as well.

The ordinary policemen and prison guards did not have a clue: Two policemen from Zenica CSB arrived in the custody unit of the Zenica KPD at 0450 hours on 21 March 1994 with the order to take Al-Gahtani to Sarajevo. Edin Bilic, chief of the custody unit of the Zenica KPD, called Djuro Globlek, then President of the Zenica High Court, early in the morning and asked for his verbal consent. Globlek agreed that Al-Gahtani should be handed over to MUP employees Omer Rizvanovic and Muradif Pervan.

**Secret Task**

With its dispatch number 02/02-488 of 24 March 1994, three days after the kidnapping, the Republic of Bosnia-Herzegovina MUP launched a search for the kidnappers of Abdul Hadi Al-Gahtani. Zenica CSB policemen Rizvanovic and Pervan gave statements about the circumstances of the kidnapping to the Zenica CSB only on 5 April. In his statement policeman Muradif Pervan said, "we got that task from the Zenica CSB and it should have been carried out in strict secrecy." "We arrived at the Zenica KPD around 0450 hours and informed the guard commander and custody unit commander Bilic about the court order. Then we took Al-Gahtani, handcuffed him, and set off toward Sarajevo in a Land Rover."

At Novo Radakovo, a district at the exit from Zenica in the direction of Sarajevo, the vehicle stopped because of a problem with the fuel supply system. The two policemen informed their superiors, after which they got a Golf vehicle. In it they continued the journey in the Lasva direction toward the village of Dusina. This is an alternate route was used for traveling to Sarajevo during the war, as it had been impossible to use the main road since May 1992.

At one curve near the village of Dusina the policemen noticed a parked gray Golf vehicle with dirty car registration plates. They also noticed a person in civilian clothes next to the vehicle. They could not go around the vehicle parked at the curve. They stopped: "At that moment a person who was bent over the engine suddenly turned around and pointed an automatic machine gun at us. We were one meter away from that person. This person, speaking the Bosnian language, ordered us to get out of our vehicle. He said that nothing would happen to us if we handed over the person we were transporting. He repeated that he was interested in that person only," policeman Pervan said later.

The policemen also described the camouflaged kidnappers: "This attacker had civilian clothes, a cap with eye openings on his head, and black gloves on his hands. At the same time I saw another three armed and camouflaged persons behind the parked vehicle with gun barrels pointed at us. Two men blocked our vehicle sideways next to the doors. They were all dressed in civilian clothes and had caps with eye openings on their heads. They had gloves on their hands. They were between 1.75 and 1.80 centimeter tall. They had leather boots on their feet, but I don't believe these were military boots. They did not talk to us."

The policemen judged that they were powerless to prevent Al-Gahtani's kidnapping and they obeyed the attackers' orders. The kidnappers of the kidnapper entered the police vehicle.

Unclassified

took Al-Gahtani out, and got into their Golf. They drove toward Dusina. When Pervan reported to the CSB, he was told that they should leave the site immediately and return to Zenica. They arrived in Zenica around 0915 hours and informed CSB chief Asim Fazlic about everything.

On the basis of these facts it appears that the investigating judge Nevzeta Boljanovic in Sarajevo, Interior Minister Bakir Alispahic, Zenica CSB Chief Asim Fazlic, and their closest aides were informed about the movement of Abdul Hadi Al-Gahtani from Zenica to Sarajevo. The KPD Zenica was informed about the order only when the policemen arrived around 0450 hours on 21 March 1994. The President of the High Court in Zenica had been informed about it in the early morning hours, so he only gave a verbal consent. The statements of policemen Rizvanovic and Pervan confirm that the task they had received from the Zenica CSB had to be carried out in strict secrecy for the sake of a safe transfer.

**Who Gave the Order?**

Therefore, only the Sarajevo judge, Minister Alispahic, and Zenica CSB Chief Fazlic had information about the route and departure time of the accused Abdul Hadi Al-Gahtani and they had to keep the information strictly secret together with their aides. Why did the kidnappers nevertheless know at what time and place they should prepare the abduction? Why did the judges and policemen decide to carry out the risky transfer of the accused at all? Nobody has ever answered this and many other questions.

It is obvious that even the High Court in Zenica obtained the information about the kidnapping only after persistent inquiries at the MUP-CSB in Zenica. Thus, on 28 March 1992 [year as published] the investigating judge of the High Court in Zenica asked for detailed information about the kidnapping in order for the court to make appropriate decisions about the further course of these criminal proceedings. Until that time the court had been forwarded only the official memorandum of 23 March about the attempted transfer of the prisoner from the Zenica KPD and his kidnapping. The court proceedings continued.

On 29 July 1994 the High Public Prosecutor's Office in Zenica brought charges against Abdul Hadi Al-Gahtani for the criminal offenses of kidnapping and homicide. The prosecution was represented by Dzemaludin Mutapcic, Republic Deputy Public Prosecutor at the time, now an assistant in the Federation Justice Ministry. It was said in the first indictment that Al-Gahtani was a director of Igasa [international Islamic humanitarian organization], not the Saudi High Commission.

Al-Gahtani admitted that the Kalashnikov that was used during the kidnapping and murder was his. At the same time he claimed, "On that critical night I slept at the El Mudzahid unit, in the premises of Vatrostalna center, although I was a civilian." So, it was established beyond a shadow of doubt that the trail of the weapon with which the crime had been committed led to the El Mudzahid barracks in the Zenica suburb of Tetovo.

Under the decision of judge Redzib Begic, the trial, which lasted until January 1996, was closed to public. In his capacity as the Chairman of the Court Chamber in "the Al-Gahtani case," Zenica High Court President Redzib Begic pronounced on 17 January that Al-Gahtani was guilty of kidnapping three British aid workers, murdering one and attempting to murder the other two. It was established that the motive of the kidnapping had been an attempt to

unclassified

"exchange the victims for captured members of the El Mudzahid unit." Ramiz Dugalic, chief of the Military Security of the 3rd Corps of the Army of the Republic of Bosnia-Herzegovina, his superior Jusuf Jasarevic, chief of the Military Security of the Army of the Republic of Bosnia-Herzegovina, and Sakib Mahmuljin, the then commander of the 3rd Corps, have never supplied documents explaining what these services had done, although it would have been logical that the Army, that is, its military security, had also undertaken its own investigation and made certain moves.

A total of six persons took part in the kidnapping of the three, and murder of one British citizen, an employee of a UK government agency. The material evidence linked the kidnappers with the El Mudzahid unit and the Saudi High Commission. However, the Bosnian police did not follow this lead in their further investigation. After several years of investigation and trials, the identity of only one kidnapper was established, whereas the identities of the other five have remained unknown. What is particularly controversial is that the identity of the key person who gave the order, described as an officer who ordered murders of the English and who carried out the murder of Paul Goodal, has remained unknown. Al-Gahtani was sentenced in absentia to 10 years in prison. The trial in Zenica showed that there was material evidence linking the El Mudzahid, the unit composed of foreign, Islamic volunteers, and Islamic humanitarian circles in Zenica with the terrorist act of kidnapping, murdering, and wounding representatives of a Western Government.

[Box, p 41] **War Will Not End Until Everyone Adopts Islam**

Saber Lahmar, librarian of the Saudi High Commission in Sarajevo, and suspected of preparing an attack against the US Embassy in Sarajevo, had been previously sentenced in Zenica for robbing a US military instructor. In his first statement given to the Travnik Police Administration on 23 October 1997 Lahmar said that he had worked as an Arab language teacher in the Saudi High Commission in Zenica and Mostar. In the closing statement at the Zenica trial Lahmar said, "Together with other people from abroad I came to Bosnia-Herzegovina in order to revitalize this nation so that this nation may live in peace." He explained that he was referring to "the nation that says that there is no other God but Allah." "As far as I am personally concerned, I am not harmed by the label of thief, as I have clear relations with God and no sin has ever entered my body. I receive a salary of DM1,100 [German mark] at the Saudi High Commission. I believe the war is not over here and that it will not be over until everyone understands that there is only one God," read his statement in the court minutes. The court sources claim that in his statement Lahmar specified that "the war against the Croats will not be over until they take the faith in one God, and that is our God."

Upon the proposal of the Cantonal Court in Zenica and Federation Prosecutor's Office on 1 December 1999 the Federation Supreme Court turned down Lahmar's request for an extraordinary remission of the prison sentence under the Zenica verdict. The Supreme Court said that there were no grounds for such an extraordinary remission. However, only a month later Lahmar nevertheless left the prison: On 6 January 2000 he was pardoned under the decision of Federation President Ejup Ganic. Exactly two years and two weeks later Lahmar was deported to the US military base in Cuba.

[Box, p 42] **Handala[0] Also Asked for Saudis' Help**

unclassified

At the end of 1997 Zenica policemen were again on a lead that linked potential terrorists with the Saudi High Commission. The police investigation, which began with a search for thieves that had stolen Golf vehicles in the Zenica-Doboj and Central Bosnia Cantons, was directed toward two Arabs who worked for the Saudi High Commission in east Mostar. It finished with the discovery and subsequent trial for a car bomb explosion in Mostar. There are a number of examples of the suspects' links with the Saudi High Commission in the court files of these police and judicial investigations. Two suspects identified themselves as employees of the Saudi High Commission. The sentenced Ali Ahmed Ali Hamad, former infantry officer from Bahrain, said during the trial in Zenica that he had worked for the Saudi High Commission as a distributor of religious literature in Zenica and the Saudi High Commission office in Mostar. At a hearing in the repeated trial on 2 November 1999 Ali Hamad said that he had worked "in the Saudi High Commission in the east part of Mostar." Witnesses claim that during the previous trial for robbery against the US military instructor he had said, "It is a holy obligation for every Arab to attack Americans because of their crimes in the Middle East," but that statement was not entered in the court minutes.

The Saudi High Commission confirmed that Khalid Seyf had worked for this humanitarian organization. Nasser Al-Saeed, director general of the regional office of the Saudi High Commission, signed a certificate on his work in organizing dinners for Muslim fasting in the month of Ramadan 1997. Khalid Seyf was acquitted of all charges. There is no information in the file about the employment of Ahmed[0] Zuhair[0] Handala[0], the number one accused for this gravest terrorist attack in Bosnia-Herzegovina after the end of the war. Like Al-Gahtani, Handala[0] was also sentenced in absentia, since he disappeared from Bosnia-Herzegovina after the beginning of the investigation in this case. Prior to that Handala[0] had been sentenced in Vitez for unlawful possession of weapons, which were discovered in his car after a traffic accident near Novi Travnik. Croat judicial sources, well versed in that first arrest of his, claim that Handala[0] was constantly demanding that an unidentified Valid, allegedly an important person from the Saudi High Commission, should be called in order to give guarantees for him. Suspicion about Handala's[0] close ties with the Saudi High Commission officials remain after reading of the file about the car bomb.

Dzemal Sabic, one of the crown witnesses for the prosecution in the Handala[0] case, retold his conversations with Handala[0] in the prison in Kaonik. "On one occasion we got a newspaper from the guard, I think it is called *Vjesnik*, which carried an article about destruction of Catholic buildings in the territory under the control of the Army of Bosnia-Herzegovina. I then said that that was not right, however, Handala[0] was fiercely opposed, approving such acts and characterizing them as very positive. I emphasize that we were talking about Catholic Church buildings, I think it was [the Franciscan monastery in] Guca Gora. Since the leaders of the Saudi High Commission humanitarian organization had said that such things must not be done, he said that regardless of that position he would do it on his own if he had a chance." Handala[0] was sentenced to 12 years in absentia. In May 2000 the Cantonal Court in Zenica asked the Federation Justice Minister to undertake "further measures in the aim of discovering, arresting, and bringing in the accused to serve his sentence." The Federation Justice Ministry forwarded this request to the Zepce Municipal Court as Handala's[0] residence had been there. There is no confirmation in the file that an international arrest warrant after him was issued via Interpol. Handala[0] was also blamed for the murder of William Jefferson, an American who was an official with the UN in Tuzla. According to the police sources, the murdered American's watch was also found among Handala's[0] belongings. Faiz Al-Shamberi, the other suspected Arab mujahidin in this case,

3.6
3.7

unclassified

unclassified

is also a Saudi citizen and a close friend of Handala's[0]. The police claimed that the pistol with which Jefferson had been killed was found on him. The police reportedly could not prove his link to the murder, so they kept him in prison for unlawful possession of weapons. Faiz Al-Shamberi disappeared after having been released from the prison owing to the amnesty for all the Bosnia-Herzegovina Army members who had been imprisoned for unlawful possession of weapons. This case has never been solved, either.

[Description of Source: Sarajevo Dani in Serbo-Croatian -- privately owned Sarajevo weekly with an independent editorial line]

*THIS REPORT MAY CONTAIN COPYRIGHTED MATERIAL. COPYING AND DISSEMINATION IS PROHIBITED WITHOUT PERMISSION OF THE COPYRIGHT OWNERS.*

## Personal Representative Review of the Record of Proceedings

I acknowledge that on 8 November 2004, I was provided the opportunity to review the record of proceedings for the Combatant Status Review Tribunal involving ISN #669.

X I have no comments.

___ My comments are attached.



Name

08NOV04
Date

S