# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AHMED ZAID SALEM ZUHAIR, *Petitioner*, v. GEORGE W. BUSH, ROBERT GATES, REAR ADM. MARK H. BUZBY, and ARMY COL. BRUCE VARGO, *Respondents*. | Civil Action No. 08-864 (EGS) |

### PETITIONER'S OPPOSITION TO GOVERNMENT'S MOTION TO DISMISS IMPROPER RESPONDENTS

Petitioner Ahmed Zaid Salem Zuhair, through his attorneys, opposes Respondents' Motion to Dismiss Improper Respondents. Given the Government's concession that the Secretary of Defense is a proper respondent and can effectuate the relief requested, Petitioner has no objection to dismissal of all respondents under the Secretary's command. For reasons set forth below, however, the Court should deny the motion to dismiss the President.[1]

### ARGUMENT

The government claims that the Executive's authority to detain Petitioner in this case arises from two sources: the *President*'s Article II powers, and the *President's* authority to "use all necessary and appropriate force" under the AUMF, 115 Stat. 224 (2001). *See* Gov't Br.

---

[1] It is not clear why the Government, three years into this case, suddenly wants to dismiss all but one Respondent from the caption. Petitioner is concerned that the motion would have substantive effects not properly considered in the Government's motion. The Petition in this case contains many claims for relief other than habeas, including claims for declaratory relief. Whether those claims are cognizable, and whether any or all of the existing Respondents are necessary for relief under those claims, are issues the Government has not addressed. Should the Government, at a later point in these proceedings, raise a jurisdictional challenge to requested relief on the basis that the immediate custodian, i.e., the Secretary's subordinates, were not named Respondents, Petitioner reserves the right to amend his petition to include these officials.

Prelim. Proced. Issues [Dkt. No. 39], at 13-14. The custodial authority of the Secretary of Defense is not mentioned in the Government's recent brief.

If the President is dismissed, then the government can evade this Court's authority simply by transferring the detainee from the custody of the Department of Defense (DoD) to the Central Intelligence Agency (CIA), or to the Department of Justice (DoJ), or to other agencies unknown to Petitioner. A number of detainees were previously transferred from CIA custody to DoD and are currently detained at Guantanamo. At least one terrorism suspect was transferred from the DoJ to DoD when the government found it convenient to do so. *See Al-Marri* v. *Pucciarelli*, ___ F.3d ___, 2008 W.L. 2736787, at *3-4 (4th Cir. July 15, 2008) (en banc) (noting Government's dismissal of indictment during criminal proceedings against defendant and order signed by the President transferring defendant to military custody). And at least one terrorism suspect was transferred from DoD to DoJ, also at the government's convenience, and to the great consternation of one federal Court of Appeals. *See Padilla* v. *Hanft*, 432 F.3d 582 (4th Cir. 2005) (denying Government's motion to transfer military detainee to civilian authorities for trial, after Court had previously given government authority to hold the detainee in military custody), *rev'd*, 546 U.S. 1084 (2006). Accordingly, inter-agency transfer in these cases is a real concern.[2]

This is not to say that Petitioner has named the President as his *future* custodian; the President is very much the current custodian and therefore is properly named as a respondent.

In justifying its attempt to dismiss the President, the government relies chiefly on an 1867 case for the proposition that courts have "no jurisdiction . . . to enjoin the President in the performance of his official duties." Gov't Mot. at 2 (quoting *Mississippi* v. *Johnson*, 71 U.S. (4 Wall.) 475, 498-499 (1867)). The Court of Appeals for the District of Columbia Circuit,

---

[2] If the government stipulates that the DoD will *not* transfer the detainee (except for release), then Petitioner would concede that the President need not be a party in the habeas case.

however, has twice interpreted *Mississippi v. Johnson* much more narrowly than the reading suggested in the government's motion. In *National Treasury Employees Union* v. *Nixon*, 492 F.2d 587, 614 (D.C. Cir. 1974), the Court of Appeals observed that *Mississippi* v. *Johnson* actually turned on a finding that the case presented a nonjusticiable political question. The Court in *National Treasury* held that *Mississippi* v. *Johnson* did not bar a Court from issuing a writ of mandamus to the President to effectuate a pay raise owed to certain federal employees (although the Court did not formally issue the writ). And in *Nixon* v. *Sirica*, 487 F.2d 700, 712 n.53 (D.C. Cir. 1973), the Court read *Mississippi* v. *Johnson* to mean merely that the President could not be enjoined to "coerce a discretionary, as opposed to ministerial, act of the Executive."

The second case cited by the government, *Franklin* v. *Massachusetts*, 505 U.S. 788 (1992), merely questioned the judiciary's authority to issue an injunction against the President, without deciding the question. *See id.* at 802-03. More recent authority makes clear that the President "is subject to judicial process in appropriate circumstances." *Clinton* v. *Jones*, 520 U.S. 681, 703 (1997). As the Supreme Court explained in *Clinton* v. *Jones*,

> Although Thomas Jefferson apparently thought otherwise, Chief Justice Marshall, when presiding in the treason trial of Aaron Burr, ruled that a subpoena *duces tecum* could be directed to the President. *United States v. Burr,* 25 F. Cas. 30 (No. 14,692d) (C.C.Va. 1807). We unequivocally and emphatically endorsed Marshall's position when we held that President Nixon was obligated to comply with a subpoena commanding him to produce certain tape recordings of his conversations with his aides.

520 U.S. at 703-04 (footnote omitted); *see also United States* v. *Nixon*, 418 U.S. 683 (1974). The Supreme Court also observed that "[s]itting Presidents have responded to court orders to

3

provide testimony and other information with sufficient frequency that such interactions between the Judicial and Executive Branches can scarcely be thought a novelty." *Id*. at 704.[3]

It may well be that this Court has no power to enforce certain orders directed to the President. But the order itself has significance. In *Ex parte Merryman*, 17 F. Cas. 144 (C.C. Md. 1861), Chief Justice Taney, sitting as Circuit Justice in the District of Maryland, issued a writ of habeas corpus to consider the petition of a Baltimore County farmer held by the military at Ft. McHenry, in Baltimore City. The officer in charge of the military prison refused to honor the writ on the ground that President Lincoln had given him the authority to suspend habeas corpus. Chief Justice Taney held that the president had no authority to suspend habeas. He directed the clerk "to transmit a copy [of the opinion], under seal, to the president of the United States. It will then remain for that high officer, in fulfillment of his constitutional obligation to 'take care that the laws be faithfully executed,' to determine what measures he will take to cause the civil process of the United States to be respected and enforced." *Id.* at 153. Petitioner in this case can ask no more, but he should not be required to ask for less.

## CONCLUSION

For the reasons stated, the Court should deny the motion to dismiss the President as a respondent in this action.

---

[3] The Court in *al-Marri* v. *Rumsfeld*, 360 F.3d 707 (7th Cir. 2004), cited *Franklin* as authority to remove the President from the caption of a habeas petition pending on appeal. The *al-Marri* decision is not binding on this Court, of course, and Petitioner contends it misreads *Franklin* and neglects the other authorities cited in the text. In *al-Marri*, moreover, the petitioner named the President and the Secretary of Defense in order to acquire jurisdiction in a district court outside his place of incarceration, so the Court needed to resolve the identity of the proper respondents in order to determine the cognizability of the petition in a particular district. In this case, the government concedes that this Court is the proper forum for this petition.

Dated: August 22, 2008

                                        Respectfully submitted,

                                        ____/s/_____
                                        Ramzi Kassem
                                        Michael J. Wishnie
                                        *Supervising Attorneys*

                                        Anand Balakrishnan
                                        Madhuri Kumar
                                        Darryl Li
                                        *Law Student Interns*

                                        Allard K. Lowenstein International Human
                                             Rights Clinic
                                        National Litigation Project
                                        Yale Law School
                                        127 Wall Street
                                        New Haven, CT 06511
                                        (203) 432-0138
                                        ramzi.kassem@yale.edu
                                        *Counsel for Petitioner*

# CERTIFICATE OF SERVICE

I hereby certify that on August 22, 2008, I caused a true and accurate copy of Petitioner's Opposition to Respondents' Motion to Dismiss Improper Respondents to be served upon the following counsel for Respondents by electronic filing and via the Court's ECF system:

Arlene Groner, Esq.
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave, NW
Washington, DC 20530


_____/s/_____
MADHURI KUMAR
Allard K. Lowenstein International Human Rights
    Clinic
National Litigation Project
Yale Law School
127 Wall Street
New Haven, CT 06511
(203) 432-0138